

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

ERICK BRADLEY, et al.,

        Plaintiffs,

v.                                          Civil Action No. 4:15cv17

DEA AGENT MICHAEL S. STUPAR, et al.,

        Defendants.

## OPINION & ORDER

This matter is before the Court on Defendant United States' ("Defendant") Motion to Dismiss or, in the Alternative for Summary Judgment ("Motion to Dismiss" or "Motion for Summary Judgment"), Doc. 14, and Plaintiffs' Motion to Transfer ("Motion to Transfer/Amend"). Doc. 20. For the reasons set forth herein, Defendant's Motion for Summary Judgment is **GRANTED** as to Defendant Michael Stupar, and **JUDGMENT IS AWARDED** in favor of Defendant Stupar. Defendant's Motion to Dismiss is **GRANTED** as to the four (4) remaining John Doe DEA Agents, and this matter is **DISMISSED WITH PREJUDICE** as to unnamed DEA Agents John Doe 1, 2, 3, and 4. Plaintiffs' Request to Amend is **DENIED** as futile.

### I. BACKGROUND

A. Factual Allegations[1]

After a comprehensive investigation into a drug trafficking organization allegedly lead by

---

[1] "In considering a motion to dismiss, [the Court] accept[s] as true all well-pleaded allegations and view[s] the complaint in the light most favorable to the [non-moving party]." Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005) (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993)). The Court cautions, however, that the facts alleged by the parties are recited here for the limited purpose of deciding the instant Motion. The recited facts are not factual findings upon which the parties may rely for any other issue in this proceeding.

an individual named Christopher Barrett ("Barrett"), on March 11, 2013 a search warrant was issued at the request of Drug Enforcement Agent Bradley Stupar ("Defendant Stupar") for a residence identified as 315 Pennsylvania Avenue, Hampton, Virginia ("315 Pennsylvania"). Am. Compl. ¶ 14. Although the investigative team indicated they had observed Barrett entering and/or exiting the residence at 315 Pennsylvania as recently as the week prior, Plaintiffs, the residents of 315 Pennsylvania, allege that Barrett has never resided at or entered their residence, and that they are not acquainted with Barrett in any way. Am. Compl. ¶¶ 15–16.

On March 13, 2013, at what Plaintiffs allege was approximately 3:00a.m., Erick and Eboni Bradley were asleep at their residence, 315 Pennsylvania, when they were startled awake by spotlights and a bullhorn. Am. Compl. ¶ 17. After hearing someone continuously shouting "315 come out with your hands up," the Bradleys allegedly exited their home to find it surrounded by DEA agents, including Defendant Stupar, as well as members of the Hampton Police Department. Am. Compl. ¶ 17. Plaintiffs allege that upon making contact with the officers, the officers refused to provide Plaintiff Erik Bradley with a copy of the search warrant and refused to look at his identification. Am. Compl. ¶ 18. Plaintiffs contend that instead Mr. Bradley was told to "shut up" while he and his wife were removed from the residence, patted down, and placed in handcuffs. Am. Compl. ¶ 18.

During execution of the search warrant, the residents of 315 Pennsylvania, Plaintiffs Erik and Eboni Bradley, Shaheem Pruden, and minor Plaintiffs Jane Doe I and II, were allegedly handcuffed and placed into separate police cars without heat and interrogated for approximately five (5) hours. Am. Compl. ¶ 22. Simultaneously, Defendants allegedly located and arrested Barrett at another residence but continued to question Plaintiffs even after Barrett was taken into custody. Am. Compl. ¶ 24. Plaintiffs contend that as a result of their unlawful detention they

have suffered great mental and physical anguish that has led to devastating financial hardship. Am. Compl. ¶ 27–31.

**B. Procedural History**

This action was brought against sixteen (16) Defendants, four (4) of whom are John Doe DEA Agents. Doc. 1. Plaintiffs were only able to serve Defendant Stupar and have since dismissed all remaining named Defendants, excluding the four (4) John Doe Agents and Defendant Stupar. Doc. 9. Accordingly, on October 28, 2015, the Court received a Notice of Substitution that the United States of America had been substituted as Defendant in this matter because Defendant Stupar was alleged and certified to have been acting within the scope of his federal employment at all times relevant to this proceeding. Doc. 16.

Following substitution, the Court granted the United States' Motion to Dismiss Plaintiffs' common law tort claims for failure to exhaust the prerequisite administrative remedies under the Federal Torts Claims Act, but it retained jurisdiction over the constitutional claims asserted by Plaintiffs under Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Doc. 23. Defendant United States now asserts that Plaintiffs have, firstly, failed to state a claim for which relief can be granted under Bivens, and secondly, that Defendant Stupar is insulated from suit under the doctrine of qualified immunity. Doc. 15. Plaintiffs have not opposed Defendant's Motion, electing instead to file a Motion to Transfer venue to the Hampton Circuit Court. Doc. 20. Plaintiffs' request for transfer to the Hampton Circuit Court was denied on December 4, 2015, Doc. 24, but Plaintiffs have alternatively sought leave to amend their Amended Complaint "to add that the Defendants obtained the search warrant for 315 Pennsylvania Avenue by either fraud or mistake and that Defendant Stupar's Affidavit was not accurate." Doc. 21.

3

## II. LEGAL STANDARDS

### A. Motions under Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although a court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. In deciding the motion, a court may consider the facts alleged on the face of the complaint as well as "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint'" without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. Moore v. Flagstar Bank, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1357 (1990)); see Pueschel v. United States, 369 F.3d 345, 353 n.3 (4th Cir. 2004) (citations omitted).

### B. Motions for Summary Judgment

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate only when a court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; see, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–50 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322–24 (1986); Terry's Floor

Fashions v. Burlington Indus., 763 F.2d 604, 610 (4th Cir. 1985). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial. Celotex, 477 U.S. at 322–24. Such facts must be presented in the form of exhibits and sworn affidavits. Failure by the nonmoving party to rebut the motion with such evidence on its behalf will result in summary judgment when appropriate. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

A mere scintilla of evidence is insufficient to withstand a motion for summary judgment. Rather, the evidence must be such that the fact-finder reasonably could find for the nonmoving party. See Anderson, 477 U.S. at 252. Although the Court must draw all justifiable inferences in favor of the nonmoving party, in order to successfully defeat a motion for summary judgment a nonmoving party cannot rely on "mere belief or conjecture, or the allegations and denials contained in his pleadings." Doyle v. Sentry Ins., 877 F. Supp. 1002, 1005 (E.D. Va. 1995) (citing Celotex, 477 U.S. at 324). Local Civil Rule 56(B) requires that each brief "include a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed." E.D. Va. Loc. Civ. R. 56(B). Further, "[i]n determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." Id. (emphasis added).

*i. The Doctrine of Qualified Immunity*

Qualified immunity is immunity from civil liability enjoyed by government officials performing discretionary functions provided their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Wheeler v. Gilmore, 998 F. Supp. 666, 669 (E.D. Va. 1998) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "[A] reasonably competent public official should know the law governing his conduct." Harlow, 457 U.S. at 819. Qualified immunity "specifically protects public officials from the specter of damages liability for judgment calls made in a legally uncertain environment." Ryder v. United States, 515 U.S. 177, 185 (1995) (citing Harlow, 457 U.S. at 806). The Supreme Court of the United States has stated, "[a] law that fails to specify the precise action that the official must take in each instance creates only discretionary authority; and that authority remains discretionary however egregiously it is abused." Davis v. Scherer, 468 U.S. 183, 196 n.14 (1984). In fact, this Court asserted that "there are few, if any, acts performed by officials which are not discretionary." Williamson v. City of Virginia Beach, 786 F. Supp. 1238, 1260 (E.D. Va. 1992).

In determining whether a government official is entitled to qualified immunity, courts must make a two-fold determination. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996). Firstly, the Court must determine whether a "defendant's conduct violated a constitutional right of the plaintiff." Id. at 119. If so established, the Court must then determine "whether the law governing the violation was clearly established at the time of the incident, and whether a reasonable person in the defendant's position should have known that his conduct was illegal. Both are issues of law for the court." Id. (internal citations omitted). The United States Court of Appeals for the Fourth Circuit has clarified that "negligence or good faith error" on the part of

public officials "will not establish a constitutional claim" for purposes of qualified immunity. Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990). The Supreme Court expounded that until the threshold legal questions underlying qualified immunity are resolved, "discovery should not be allowed." Harlow, 457 U.S. at 818. "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Michell v. Forsyth, 472 U.S. 511, 526 (1985).

### C. Motion to Amend under Rule 15(a)(2)

Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). "This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006). However, this Court may deny leave to amend "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." Laber, 438 F.3d at 426 (citing Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)). The Court has discretion to deny a motion for leave to amend as futile if the proposed amendment would be "clearly insufficient or frivolous on its face." Johnson, 785 F.2d at 510.

### III. ANALYSIS

Whether a defendant is entitled to dismissal under the doctrine of qualified immunity is premised upon whether a plaintiff has plausibly claimed that the defendant violated his clearly established constitutional rights. See Michell, 472 U.S. at 526; Trulock v. Freeh, 275 F.3d 391, 399 (4th Cir. 2001). Accordingly, the Court will begin by addressing Defendant's challenge

under Rule 12(b)(6), as a finding that Plaintiffs have not sufficiently pled their constitutional claims is a prerequisite to finding that Defendant Stupar is entitled to qualified immunity.

### A. Defendant's Motion to Dismiss under Rule 12(b)(6)

Plaintiffs' brought this suit pursuant to Bivens alleging violations of their First, Fourth, and Eighth Amendment rights. Am. Compl. ¶¶ 6, 7, 11, 26. In order to prevail on a Bivens claim, Plaintiffs must establish that they suffered "injury to a constitutionally protected interest at the hands of federal officials." Middlebrooks v. Leavitt, 525 F.3d 341 (4th Cir. 2008). "The factors necessary to establish a Bivens violation will vary with the constitutional provision at issue," Iqbal, 556 U.S. at 676, but Bivens "liability is personal, based upon each defendant's own violations." Trulock, 275 F.3d at 402. Plaintiffs, therefore, "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676.

*i. The First Amendment*

"The threshold question in any First Amendment challenge, of course, is whether any protected First Amendment right is involved. If the answer to that question is no, then 'we need go no further.'" Willis v. Town of Marshall, N.C., 426 F.3d 251, 257 (4th Cir. 2005). The First Amendment guarantees free exercise of religion, freedom of speech and the press, the right to peaceably assemble, and the right "to petition the Government for a redress of grievances." U.S. Const. amend. I. The Supreme Court has explicitly stated that Bivens does not extend "to a claim sounding in the First Amendment." Iqbal, 556 U.S. at 676. Even if the Court were to imply a Bivens remedy, Plaintiffs' Amended Complaint does not articulate which of Plaintiffs' First Amendment rights were allegedly deprived.

Plaintiffs allege that Plaintiff Erick Bradley "was told to shut up" by the Defendant

officers when he requested to see a copy of the search warrant. Am. Compl. ¶ 5. To the extent that this is the crux of Plaintiffs' First Amendment claims, Plaintiffs have failed to state a claim upon which relief can be granted. "Arresting officers simply do not violate their arrestee's First Amendment rights by telling him or her to shut up." Minyard v. Walsh, No. CV 13-00110, 2014 WL 1029835, at *4 (C.D. Cal. Mar. 17, 2014). Plaintiffs have neither alleged which First Amendment rights the Defendant officers are accused of violating nor the means by which the individual Defendants violated those rights. Accordingly, Plaintiffs have failed to state a cognizable claim under both the First Amendment and Bivens.

*ii. The Eighth Amendment*

Plaintiffs contend that "[a]t all times relevant during Plaintiffs' unlawful detention, it was the duty of the Defendants to exercise reasonable and acceptable measures to protect their Eighth Amendment rights from cruel and unusual punishment." Am. Compl. ¶ 7. The Eighth Amendment protects against the imposition of excessive bail and fines, as well as the infliction of cruel and unusual punishment. U.S. Const. amend. VIII. It is well established that "the Eighth Amendment's prohibition against cruel and unusual punishment . . . applies only post-conviction." Veney v. Ojeda, 321 F. Supp. 2d 733, 439 (E.D. Va. 2004). Alleged offending acts occurring before conviction foreclose "application of the Eight[h] Amendment under Ingrahman v. Wright." Bruette v. Montgomery County, Maryland, 70 F. App'x 88, 94 (4th Cir. 2003) (citing Ingraham v. Wright, 430 U.S. 651, 671 n.40 (1977)). Plaintiffs are not alleged to have been convicted of any offense, and their Eighth Amendment claims are alleged to arise only from the events of March 13, 2013. Am. Compl. ¶¶ 7, 19, 20, 22, 25, 27. Accordingly, Plaintiffs have failed to state a claim upon which relief can be granted under the Eighth Amendment.

### *iii. The Fourth Amendment*

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and the right to the issuance of a warrant upon probable cause "particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Accusations of unlawful search and seizure require the Court to balance a defendant's alleged intrusion on a plaintiff's "Fourth Amendment interests against its promotion of legitimate governmental interest." Davis v. Black, No. 3:09cv557, 2010 WL 1779982, at *9 (E.D. Va. Apr. 29, 2010) (citing Delaware v. Prouse, 440 U.S. 648, 654 (1979)). Plaintiffs' allegations that they were unlawfully detained by Defendants on March 13, 2013 are akin to "unreasonable seizure" claims under the Fourth Amendment. Am. Compl. ¶¶ 18–23, 25, 27.

The Fourth Circuit has adopted a "heightened pleading standard" in Bivens actions. Dunbar Corp. v. Lindsey, 905 F.2d 754, 764 (4th Cir. 1990). This heightened standard operates, in practice, much like Federal Rule of Civil Procedure 9(b)'s requirement that allegations of fraud be pled "with particularity." Martin v. Malhoyt, 830 F.2d 237, 257 (D.D.C. 1987) (citing Fed. R. Civ. P. 9(b)). "[C]omplaints against federal officials for constitutional tort causes of action must clearly set forth such facts that will show the existence of the clearly established constitutional right and what the defendants did to violate it—'who did what to whom and why.'" Awalt v. Whalen, 809 F. Supp. 414, 416 (E.D. Va. 1992) (quoting Dewey v. University of New Hampshire, 694 F.2d 1, 3 (1st Cir. 1982)); see also Bartrug v. Rubin, 986 F. Supp. 332, 335 (E.D. Va. 1997). Plaintiffs have not satisfied the requirements of this heightened standard.

"In considering a motion to dismiss, [the Court] accept[s] as true all well-pleaded allegations." Venkatraman, 417 F.3d at 420 (citing Mylan Labs., Inc., 7 F.3d at 1134).

Although John Doe DEA Agents 1, 2, 3, and 4 are unidentified, Plaintiffs have alleged that "[o]n or about March 13, 2013, and all other times relevant hereto, Defendant DEA Agent Michael S. Stupar . . . and Defendant DEA Agents, John Doe 1, 2, 3, and 4, were agents and/or employees of the Defendant, United States Drug Enforcement Agency and at all times were acting within the scope of their employment." Am. Compl. ¶ 2. Therefore, the Court will accept as true these allegations and assume, for purposes of Defendant's Motion to Dismiss, that Defendant DEA Agents John Doe 1, 2, 3, and 4 were acting within the scope of their federal employment at all times relevant to the present action.

Of the constitutional violations alleged, Plaintiffs factual contentions most clearly pled a cause of action under the Fourth Amendment. However, Plaintiffs have not satisfied the basic "who did what to whom and why" standard as required in Bivens actions. Plaintiffs contend, with broad sweeping generalizations, that "one or more of the Defendant officers" refused to furnish Plaintiff Erick Bradley "with a copy of the search warrant" and "removed him and his wife, Plaintiff Eboni Pruden Bradley, from the residence, patted them down and placed them in handcuffs." Am. Compl. ¶ 18. Plaintiffs then allege that Plaintiffs Shaheem Pruden, Jane Doe I, and Jane Doe II were patted down, handcuffed and placed in separate police cars, but do not allege by whom. Am. Compl. ¶¶ 20, 21.

Plaintiffs further allege that they were held in custody for approximately five (5) hours while being "vigorously and harshly interrogated and their home searched and ransacked by the Defendant officers." Am. Compl. ¶ 22. Again, Plaintiffs have not alleged with specificity which officers are allegedly responsible for which violations. Even interpreting the facts in light most favorable to Plaintiffs, it is not plausible that each of the five (5) Defendant officers were simultaneously interrogating all five (5) Plaintiffs while at the same time searching the Plaintiffs'

11

home, which is how the Amended Complaint is pled. Plaintiffs further plead that "the Defendant officers continued to unlawfully detain and restrain the Plaintiffs of their liberty by words and acts that Plaintiffs feared to disregard," but have not stated what those "words and acts" were nor which Defendants committed which actions and as to which Plaintiffs. Am. Compl. ¶ 25.

To the extent that Plaintiffs are contending that the search and seizure was unreasonable because of a deficient warrant, Plaintiffs must allege that Defendant Stupar "deliberately or with a 'reckless disregard for the truth' made material false statements in his affidavit." Miller v. Prince George's County, MD, 475 F.3d 621, 627 (4th Cir. 2007). Plaintiffs have failed to make such a showing. Plaintiffs allege only that Defendant Stupar obtained the warrant "after a lengthy and thorough investigation," that he obtained the warrant "based upon information obtained through surveillance and other investigative methods," and that "Defendant Stupar knew that Barrett resided on Pennsylvania Avenue and in fact, members of the investigative team [ ] [had] observed Barret entering and/or existing that residence [315 Pennsylvania] as recently as March 7, 2013." Am. Compl. ¶¶ 14, 15. In consideration of the heightened pleading standard as required in Bivens actions, Plaintiffs have failed to state a plausible claim for relief under the Fourth Amendment.

*iv. Summary*

As Plaintiffs' Amended Complaint fails to state a plausible claim for relief, this matter is **DISMISSED WITH PREJUDICE** as to Defendants unnamed DEA Agents John Doe 1, 2, 3, and 4. Defendant Stupar is also subject to dismissal from this matter pursuant to Rule 12(b)(6), but because Defendant Stupar has pled qualified immunity, the Court must determine if he is entitled to have judgment entered in his favor.

## B. Motion for Summary Judgement

In <u>Mitchell</u>, the Supreme Court held that "[u]less the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." 472 U.S. at 526. Once a defendant has properly supported its motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial. <u>Celotex</u>, 477 U.S. at 322–24. "In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, <u>unless such a fact is controverted</u> in the statement of genuine issues filed in opposition to the motion." E.D. Va. Loc. Civ. R. 56(B) (emphasis added).

In this Circuit, a defendant claiming qualified immunity "bears the burden of demonstrating that the conduct of which the plaintiff complains 'falls within the scope of the defendant's duties.'" <u>In re Allen</u>, 106 F.3d 582, 594 (4th Cir. 1997) (quoting <u>Shechter</u>, 79 F.3d at 268). Plaintiffs have alleged that "[o]n or about March 13, 2013, and all other times relevant hereto, Defendant DEA Agent Michael S. Stupar . . . and Defendant DEA Agents, John Doe 1, 2, 3, and 4, were agents and/or employees of the Defendant, United States Drug Enforcement Agency and at all times were acting within the scope of their employment." Am. Compl. ¶ 2. Further, the United States has set forth specific facts showing that Defendant Stupar was acting in connection with his discretionary duties related to the investigation of Barrett and the "Barrett Drug Trafficking Organization" at the time the alleged offenses occurred. Doc. 15 at 5, 8, 9. However, because DEA Agents John Doe 1, 2, 3, and 4 are unidentified, the United States cannot demonstrate that the alleged unconstitutional actions of each of the John Doe DEA Agents fell within the scope of their individual duties. Accordingly, only Defendant Stupar is

eligible for qualified immunity.

The Court has already determined that Plaintiffs have not sufficiently alleged any constitutional violations, and Plaintiffs have not come forth with evidence beyond the pleadings to show that there are genuine issues of material fact warranting a denial of summary judgment. As Plaintiffs elected not to respond to Defendant's Motion for Summary Judgment, the Court will assume the material facts identified by the nonmoving party are admitted. E.D. Va. Loc. Civ. R. 56(B). Defendant claims that at the time the search warrant was executed, "no DEA agents were located on or in front of the property at the time," and that "Agent Stupar was standing several car lengths down the street." Doc. 15 at 8. Viewing the record as a whole and in the light most favorable to the nonmoving party, the Court determines that Defendant Stupar is entitled to summary judgment on qualified immunity grounds. Defendant Stupar was acting within the scope of his official duties at all times relevant to the allegations, and Plaintiffs have failed to allege that Defendant Stupar violated their clearly established constitutional rights. Accordingly, **JUDGMENT IS AWARDED** in favor of Defendant Stupar.

C. Request for Leave to Amend

In so far as Plaintiffs have requested leave to amend their Amended Complaint, the Court has discretion to deny a request for leave to amend if the proposed amendment would be "clearly insufficient or frivolous on its face." Johnson, 785 F.2d at 510. Here, Plaintiffs propose amending their Amended Complaint to "add that the Defendants obtained the search warrant for 315 Pennsylvania Avenue by either fraud or mistake and that Defendant Stupar's Affidavit was not accurate." Doc. 21 at 2. The Court finds that Plaintiffs' proposed amendments would be futile, as they suffer from the same defects present in Plaintiffs' Amended Complaint.

Firstly, Plaintiffs' proposed amendments do not identify which Defendants are alleged to

have obtained the search warrant under fraudulent pretenses or which facts are alleged to have been fraudulently incorporated into the warrant. Such broad sweeping allegations do not meet the heightened pleading standard required when alleging Bivens violations. Secondly, in order to state a claim for relief under the Fourth Amendment based on a deficient warrant, Plaintiffs must allege that Defendant Stupar, acting "deliberately or with a 'reckless disregard for the truth' made material false statements in his affidavit." Miller, 475 F.3d at 627. Plaintiffs' proposed amendments only allege that Defendant Stupar's affidavit was "not accurate," and "[a] plaintiff's 'allegations of negligence or innocent mistake' by a police officer will not provide a basis for a constitutional violation." Miller v. Prince George's Cty., MD, 475 F.3d 621, 627–28 (4th Cir. 2007) (citing Franks v. Delaware, 438 U.S. 154, 171 (1978)) (emphasis in original).

Lastly, the Court must consider the policy interests inherent in the doctrine of qualified immunity. It is mandated that, "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Mitchell, 472 U.S. at 526. The Supreme Court has cautioned that the rule of qualified immunity should not "be transformed from a guarantee of immunity into a rule of pleading," Anderson v. Creighton, 483 U.S. 635, 639 (1987), and the Court has already determined that Plaintiffs' Amended Complaint does not state a plausible claim for relief under the First, Eighth, and Fourth Amendments.

Accordingly, Defendant Stupar is entitled to qualified immunity so that he will not have to face any further litigation burdens. Iqbal, 556 U.S. at 672 (quoting Mitchell, 472 U.S. at 526). The Court also finds that the amendments proposed by Plaintiffs would by futile, as they are "clearly insufficient" to defeat Defendant's Motion for the reasons articulated herein. See Fields v. Martin, No. 13cv10166, 2014 WL 4064807, at *3–4 (E.D. Mich. May 30, 2014), report and

recommendation adopted by, 2014 WL 4064343 (E.D. Mich. Aug. 18, 2014) (denying a plaintiff's motion to amend his complaint on futility grounds as qualified immunity would have been granted on a defendant's motion for summary judgment regardless of amendment). In so far as Plaintiffs have requested leave to amend, such a request is **DENIED** as futile.

## IV. CONCLUSION

For the reasons set forth herein, Defendant's Motion to Dismiss, Doc. 14, is **GRANTED**, and this matter is **DISMISSED WITH PREJUDICE** as to unnamed DEA Agents John Doe 1, 2, 3, and 4.

Defendant's Motion for Summary Judgment, Doc. 14, is **GRANTED** as to Defendant Michael Stupar, and **JUDGMENT IS AWARDED** in favor of Defendant Stupar.

In so far as Plaintiffs have requested leave to amend their Amended Complaint, Doc. 20, leave to amend is **DENIED** as futile.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge
_____
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
December 21, 2015